RINTOUL, and others *v.* NEW YORK CENT. & H. R. R. Co.

*(Circuit Court, S. D. New York.* August 24, 1883.)

1. COMMON CARRIER—CONTRACTING FOR EXEMPTION FROM NEGLIGENCE.
   A common carrier cannot lawfully stipulate for exemption from responsibility for the negligence of himself or his servants.

2. SAME—PRESUMPTION OF WANT OF CARE.
   When a thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.

3. SAME—BILL OF LADING—BENEFIT OF INSURANCE.
   A clause in a bill of lading which provides that the carrier who is legally liable for any damage shall have the benefit of any insurance that may have been effected upon the damaged goods, is not an unreasonable and unjust exemption from liability for negligence, and may be enforced.

At Law.

*George W. Wingate,* for plaintiffs.

*Frank Loomis,* for defendants.

SHIPMAN, J. This is an action at law, which was tried by the court upon an agreed statement of facts, a trial by jury having been waived, by written stipulation of the parties. The facts which were agreed by the parties, and which were found by the court to be true, are as follows:

"The following facts are agreed upon for the purposes of the trial of the above-entitled action:

"(1) The plaintiffs are partners in business at Glasgow, Scotland, under the firm name of P. Rintoul & Sons, and are citizens and residents of Great Britain.

"(2) The defendants are a corporation formed pursuant to the laws of the state of New York, and own and operate the railroads known as the New York Central Railroad and the Hudson River Railroad, together extending from the city of Buffalo to the city of New York, in said state.

"(3) That on the thirtieth day of July, 1880, the Yeager Milling Company of St. Louis, Missouri, at said St. Louis, having previously obtained from the Merchants' Dispatch Transportation Company a rate for the carriage of 1,400 sacks of flour, the property of the plaintiffs, from St. Louis to Glasgow, and delivered said flour to one of the railroad companies, connections of the Merchants' Dispatch Transportation Company, operating a railroad eastward from St. Louis, and designated by said company, and obtained a memorandum receipt.for said flour from said railroad company, surrendered said receipt to one Eugene Field, the several agent at St. Louis of the Merchants' Dispatch Transportation Company and the Allan Line Steam-ship Company, and obtained from him a certain bill of lading numbered '145,' (to be produced by the plaintiffs.) That thereafter said milling company indorsed said bill of lading to the plaintiffs.

"(4) That the Merchants' Dispatch Transportation Company, on said thirtieth day of July, 1880, was a joint-stock association, neither owning nor operating any railroad or railroads, but engaged in the business of contracting for the carriage of goods between points on many of the railroads of the United States, and in procuring the execution by the companies owning or operating said railroads of said contracts, and having contracts with said railroad companies for the execution of contracts for the transportation of goods made by them, the said Merchants' Dispatch Transportation Company, all which facts were, at and before said thirtieth day of July, 1880, well known to said the Yeager Milling Company.

"(5) That in the course of the transportation of said flour by the connections of the said the Merchants' Dispatch Transportation Company from St. Louis eastward, the defendants, one of said connections, received said flour at Buffalo to transport the same to Albany, and there to deliver the same to the Boston & Albany Railroad Company, another of said connections, to be thence transported to East Boston.

"(6) That during the transportation of said flour by the defendants, the same, on the fourth of August, 1880, was in a car of one of defendants' trains which had stopped at Palmyra, New York, for water for the engine, when the rear of said train was run into by another train of the defendants, and the car containing said flour, and said flour, were destroyed by fire caused by such collision.

"(7) That the value of said flour was $1,016.

"(8) That prior to the destruction of said flour as aforesaid an insurance had been effected by the plaintiffs on said flour with the Phœnix Insurance Company of New York to the full value of said flour.

"(9) That after the destruction of said flour, and before the commencement of this action, the plaintiffs received from said insurance company the said insurance on said flour to the full amount of the value of said flour.

"New York, April 23, 1883.

"WINGATE & CULLEN, Plaintiffs' Attorneys.
"FRANK LOOMIS, Defendants' Attorney."

The bill of lading contained the following terms and conditions, which are material to the case:

"That the said Merchants' Dispatch Transportation Company, and its connections, which receives said property, shall not be liable   \*   \*   \*   for loss or damage by wet, dirt, fire,   \*   \*   \*   nor for loss or damage of any article or property whatever, by fire or other casualty, while in transit,   \*   \*   \* nor for loss or damage by fire, collision, or the dangers of navigation while on seas, rivers, lakes, or canals.   \*   \*   \*

"It is further stipulated and agreed that, in case of any loss, detriment, or damage done to or sustained by any of the property herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment, or damage, and the carrier so liable shall have the full benefit of any insurance that may have been effected upon or on account of said goods.   \*   \*   \*

"NOTICE. In accepting this bill of lading, the shipper or the agent of the owner of the property carried expressly accepts and agrees to all its stipulations, exceptions, and conditions, whether written or printed."

1. The fundamental principle which is applicable to the foregoing facts is stated in the conclusions of the supreme court in *Railroad Co.* v. *Lockwood*, 17 Wall. 357, as follows:

"*First*, that a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just and reasonable in the eye of the law; *second*, that it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants."

The exemption in the bill of lading from the liability of the land carrier for fire or other casualty does not include exemption from liability for a casualty which was caused by the negligence or want of care of the carrier in whose custody the property was at the time of the happening of the damage.

2. The presumption from the facts which are contained in the agreed statement is that the fire and injury were caused by the negligence of the defendants, and this presumption was not rebutted. "When the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care." *Scott* v. *Dock Co.* 3 Hurl. & C. 596; *Transp. Co.* v. *Downer,* 11 Wall. 129; *Rose* v. *Stephens & Condit Transp. Co.* 11 FED. REP. 438. The defendant was, therefore, liable to the plaintiff for the damage occasioned by such negligence.

3. The remaining question is whether the clause in the bill of lading which provides that the carrier who is legally liable for any damage shall have the benefit of any insurance that may have been effected upon the damaged goods, shall be so construed as to give the benefit of the insurance to a carrier whose negligence caused the injury, or whether such a contract, so construed, is not an unjust and unreasonable exemption from liability for negligence.

The argument of the plaintiff is to the effect that such a contract

virtually protects the carrier from liability arising from his negligence, because the owner of property in transit is compelled, as a prudent business man, to insure against the accidental injuries for which the carrier is not liable, and therefore if the contract is valid the carrier has indirectly and covertly, but securely, protected himself against the injurious consequences of his want of care by an insurance for which he did not pay, and on account of which there is no evidence of a reduction of the rates for freight. It does not seem to me that such a contract is unreasonable, because:

(1) It is not one of exemption from liability. The owner is under no obligation to insure; he is not compelled to furnish indemnity to the carrier; and, if he insures, can make a limited contract of insurance which does not cover losses through the carrier's negligence. There is, therefore, no contract of exemption against liability for loss by negligence, no agreement that the carrier shall be protected or be indemnified, but the contract simply is that, in the contingency of insurance, a consequent benefit will, in case of loss, result to the carrier.

(2) It is not unfair to the owner. The carrier is at liberty to insure his interest in the property intrusted to his care, and the fact that he may obtain an indemnity from a third person by means of the owner's policy is not unfair to the owner, unless the obtaining such indemnity is, in reality, made compulsory upon him, because the owner "can equitably receive but one satisfaction" for the loss of his goods. *Hart* v. *Railroad Corp.* 13 Metc. 99. If it was a part of the bill of lading that the owner must insure for the benefit of the carrier, such condition would be unfair.

(3) The contract is not necessarily unfair to the insurers.

At common law, the owner who has been paid in full or in part for his loss by the insurance company, may sue the carrier upon the contract of bailment, and as to so much of the amount recovered from the carrier as is in excess of a full satisfaction of the loss, the owner will be a trustee for the insurance company. It seems that the effect of the clause in the bill of lading which is now under consideration is to provide that the owner in such circumstances is not a trustee for the insurance company, but a trustee for the carrier. If such a contract is entered into, without fraudulent concealment of the facts from the insurers, of which there is no evidence in this case, it cannot properly be considered unjust or unreasonable, because the insurance company obtains its remedy, not by virtue of a contract of its own with the carrier, but through the owner's contract, and its right depends upon or is subject to the agreement made by the owner with the carrier, which he is at liberty to make to suit his own interest, provided there is no fraudulent concealment from the insurers. They can, in view of this provision in bills of lading, modify the contract which they have heretofore customarily made with the insured, and the result will probably be that the insurers

will also make provisions in their policies, by virtue of which insurance on property in transit will have a limited character.

In the absence of any contract on the subject, if the insured owner accepts payment from the insurers, they "may use the name of the assured in an action to obtain redress from the carrier, whose failure of duty caused the loss." The right rests upon "the doctrine of subrogation, dependent, not all upon privity of contract, but worked out through the right of the creditor or owner." The suit cannot be in the name of the insurers. *Hall* v. *Railroad Cos.* 13 Wall. 367; *Hart* v. *Railroad Corp.* 13 Metc. 99; *Mercantile Mut. Ins. Co.* v. *Calebs,* 20 N. Y. 173; *Conn. Mut. Life Ins. Co.* v. *Railroad Co.* 25 Conn. 265. By the contract in question the owner agrees that, as between him and the carrier, the latter, when he has paid for the loss, may have the benefit of the insurance. This contract will probably interfere with the benefit which the insurer would otherwise obtain by virtue of being subrogated to the rights of the owner, or of having an equitable assignment of the owner's interest in the policy; but the mere fact, in the absence of fraud, that the insurers may not occupy the same position which they would have had if the provision had not been inserted, is not sufficient to justify an opinion that the provision is unreasonable.

The amount of the premium and the amount received by the plaintiffs from the insurance are not given in the agreed statement. I am inclined to the opinion that the owner is only bound to account to the carrier for the net avails of the insurance, and if those avails were less than the value of the goods, a balance would still be due from the defendant. But as the finding simply says that the plaintiffs received from the insurers the full value of the flour, I cannot assume that the net avails were not a full indemnity for the loss.

The defendant is liable for the amount of the loss, deducting the sum which the plaintiff has already received by way of indemnity, and as the entire amount of the loss has been paid, the plaintiff is entitled, under the contract, to receive nothing more.

Judgment is to be entered for the defendant.