## JACKSON COMPANY *vs.* BOYLSTON MUTUAL INSURANCE COMPANY.

Suffolk.    March 6. — June 24, 1885.    W. ALLEN, COLBURN, & HOLMES, JJ., absent.

If a policy of insurance on goods in transit contains no clause specifically subrogating the insurer to the rights of the insured in case of a loss through the fault of a carrier, it is no defence to an action on the policy for a loss insured against, that the insured has, by a contract with the carrier, given him the benefit of any insurance effected, if there is no fraud or concealment on the part of the insured in effecting the insurance.

A provision in a contract of carriage, that the carrier incurring liability by reason of loss or damage to the goods sustained during transportation shall have the benefit of any insurance which may have been effected upon the goods, is not within the clause in a policy of insurance on the goods, that "this insurance shall be void in case the policy or the interest insured thereby shall be sold, assigned, transferred, or pledged, without the consent in writing of the insurer."

DEVENS, J. This is an action on a policy of insurance, by which the defendant insured the plaintiff on cotton in transit between ports and places in the United States and the plaintiff's mills in New Hampshire. The cotton was bought by one Ivy, as broker for the plaintiff, and was shipped by him by the Atlanta and West Point Railroad Company and connecting lines. It was in two lots, and Ivy, attaching the two railroad receipts to a draft, drew on the plaintiff for the amount of the purchases. The draft, with the railroad receipts attached, was received by the plaintiff's treasurer on October 17, 1883, and paid on presentation; after which he gave notice to the defendant of the shipments, and presented the policy that they might be indorsed thereon, which was done. The railroad receipts, given on behalf of the Atlanta and West Point Railroad Company and connecting lines, contained a stipulation that, in case of loss or damage to the cotton sustained during transportation, whereby legal liability might be incurred, only that company should be responsible in whose actual custody the cotton might be at the time of the occurrence, and, further, that "the company incurring such liability shall have the benefit of any insurance which may have been effected upon or on account of said cotton." There was an additional agreement in the stipulation as

to the mode of computing the value of the property, not now important.

Ivy did not read the railroad receipts, and it does not appear whether he did or did not know their contents, so far as the clause relating to insurance is concerned. The railroad receipts were not sent to the defendant, nor their contents communicated, nor did it ask to see them. It did not appear that the defendant knew whether they were received. The plaintiff's treasurer did not read them, nor did he or the plaintiff know that they contained this clause, nor did they know that receipts containing such a clause would be, or were likely to be, taken ; and no fraud or concealment from the defendant was intended.

While in transit, and in the actual custody of the South Carolina Railroad Company, a common carrier, and one of the connecting lines of the Atlanta and West Point Railroad Company, and in the State of South Carolina, thirty-six bales of the cotton insured were destroyed by a fire, the origin and cause of which are unknown. For the value of this cotton, this action is brought.

The defendant contends that, whether the contract between the plaintiff and the carrier is governed by the law of Massachusetts, Georgia, or South Carolina, it was, so far as it stipulated in favor of the carrier for the benefit of any insurance that might have been effected, valid and binding upon the plaintiff. While this question has been thoroughly discussed on both sides, and with careful examination of the statutes and decisions in each State, it will not be necessary to decide it. In the view we take of the case, we shall assume, in favor of the defendant's contention, that the stipulation was valid and binding between the plaintiff and the carrier.

If it be thus held, the defendant then contends that this was a contract in violation of the defendant's rights, and rendered the policy void, for the reason that, when the insurer of goods in the custody of a carrier pays the loss on the goods insured to the owner, he is ordinarily entitled to be put in the place of the insured, and clothed with all his rights. *Hart* v. *Western Railroad*, 13 Met. 99. The defendant further contends, that, this being the well-recognized law at the time of the contract of

insurance, both the plaintiff and the defendant must have contemplated this right of subrogation in case of loss, and, if the plaintiff has destroyed it by a contract which would deprive the defendant of this right, the policy is avoided.

Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities. This right does not necessarily depend upon contract, but grows out of the relation which two parties sustain to each other. The party subrogated acquires no greater rights than those of the party for whom he is substituted. It is, as a general principle, true, that, if goods are injured by transportation, under such circumstances that the carrier and the insurer are alike liable therefor, and the insurer pays for such injury, he will be subrogated to such claim as the owner may have against the carrier. And this, apparently, because the liability of the carrier is treated as primary, while that of the insurer is secondary only. The contract of insurance being one of indemnity, the insurer, when he has indemnified the insured, is equitably entitled to succeed to the right which he had against the carrier. But as the insurance company obtains its remedy against the carrier, not by virtue of any contract of its own with him, but through the contract of the owner of the goods, such owner may make the contract of carriage so as to suit his own interest, provided there is no fraudulent concealment from the insurer; and the right which the insurer obtains is subject to the agreement made with the carrier. Carriers have an insurable interest in the goods they transport, and may therefore effect insurance upon them for their own benefit. There is no reason why they may not insure them jointly with the owner, and, if so, why they may not contract for the benefit of insurance effected by the owner, in the absence of fraud or any contract to the contrary with the insurer. *Chase* v. *Washington Ins. Co.* 12 Barb. 595. *Van Natta* v. *Mutual Security Ins. Co.* 2 Sandf. 490. The owner is under no obligation to contract so that he shall have a remedy against the carrier under every circumstance in which the carrier has been held liable by the common law. If he may accept a receipt excusing the carrier from

liability for fire, and still hold the insurer, he may also make a contract that the insurance shall be for the benefit of the carrier.

The defendant contends that, by reason of the existence of this right of subrogation, the plaintiff has obtained its insurance at a lower rate than it otherwise would have done; but it is also true, that, by an agreement that the carrier shall have the benefit of the insurance, he has probably obtained the carriage of his goods at a lower rate of transportation. The insurer, as against the carrier, is entitled to preference only when there is no agreement to the contrary, and the insured thus has a claim against the carrier. If the carrier may insure on his own account, he may contract with the person whose goods he carries that such person shall insure for his benefit. While the question has not been the subject of discussion in this Commonwealth, these remarks are well sustained by authority elsewhere.

In *Mercantile Ins. Co.* v. *Calebs*, 20 N. Y. 173, it was held that the carrier of goods might, by contract with the owner, secure to himself, in case of loss or damage to the goods for which the carrier would be liable, the benefit of any insurance to be effected by the owner; and that such a clause in a contract of carriage, although made without the assent or knowledge of the insurer, was not a fraud on his rights. This case did not present the element of negligence on the part of the carrier. In *Phœnix Ins. Co.* v. *Erie & Western Transportation Co.* 10 Biss. 18, it appeared that the loss was caused by the negligence of the servants of the carrier; and it was held that, even if the carrier could not, as between himself and the shipper, have contracted that he should not be liable for his own negligence or that of his servants, he was entitled to contract with the shipper for the benefit of his insurance. Having so done, the insurance company, which had paid the shipper, obtained no right of action by subrogation against the carrier. The contract between the insured and the carrier being valid, the latter was protected from any action by the insurer. See also *Rintoul* v. *New York Central & Hudson River Railroad*, 21 Blatchf. 439.

The case on which the defendant mainly relies, *Carstairs* v. *Mechanics' & Traders' Ins. Co.* 18 Fed. Rep. 473, is readily

distinguishable by the important fact, that it was there expressly stipulated that, in case of loss, the insurance company should be subrogated to all claims against the transporter. When, therefore, the insured took from the carrier a bill of lading containing a clause similar to that which is found in the case at bar, he made it impossible to do that which he had in terms agreed in the policy issued to him that he would do, and was not therefore entitled to recover upon it. While the contract in terms made with the insurer by the insured could not be modified by him, this presents no reason why he may not modifiy a right of subrogation, which depends only on his own relations to the carrier, by changing those relations.

There is no ground, in the case at bar, upon which any fraud or concealment can be asserted. The receipts which would be given for carriage the defendant well knew would be various, as the cotton would pass through States controlled by different laws. The right of the owner so to contract that the carrier should have the benefit of his insurance, the defendant must have known had been asserted, as it became a subject of judicial decision as early as 1859. *Mercantile Ins. Co.* v. *Calebs, ubi supra.* It made no inquiries, and the plaintiff's officers did not know of the existence of the clause.

Nor can the position of the defendant, that this agreement was within the clause in the policy by which it is agreed that " this insurance shall be void in case the policy or the interest insured thereby shall be sold, assigned, transferred, or pledged, without the consent in writing of the insurers," be maintained. The policy and the interest in it are still retained by the owner ; it is neither transferred nor pledged. There is a collateral agreement only, that the carrier, having incurred a liability, shall have the benefit of the insurance that may have been effected.

That the contract between the plaintiff and the carrier was binding and valid being conceded, we are brought to the conclusion expressed in the ruling of the judge who presided at the trial, " that, in a case where there was no intention to deprive the insurance company of its rights, and no intentional fraud and concealment, and where the plaintiff itself was actually ignorant of the stipulation relied on at the time it made the insurance or

obtained the indorsement on the policy, and was ignorant when it ordered the cotton that any such stipulation would be made, and there was no actual misrepresentation, an insurance company insuring property *in transitu*, making no provision in regard to the nature of the contract of carriage, and not requesting to see the bill of lading or receipt, and making no inquiries about them, must be held to have insured it under and subject to the actual contract of carriage, so far as it was a lawful contract." The defendant has no just ground of complaint against the ruling which was in these terms.

*Judgment for the plaintiff.*

*F. Peabody, Jr.,* for the defendant.

*E. Merwin & R. H. Gardiner, Jr.,* for the plaintiff.