Freedman, J.
This case was tried by the court on an agreed statement of facts, and the most important question presented by the appeal is as to the effect to be given to section 4 of the bill of lading, in view of the nonassignment clause in the policy. The words of the policy, “warranted by the assured that their interest in the within insurance has not been assigned, or will not under any circumstance be assigned, to any common carrier,” import an. absolute obligation on the part of the assured; and a breach thereof rendered the policy void, without reference to the question whether the said breach caused injury to the underwriter or not. 1 Pars. Mar. Ins. p. 337.
The question then remains whether there was any such breach. At the time of the shipment of the goods, the Dundee Chemical Works received from the railroad company a certain bill of lading, under which the company agreed to carry the goods according to the terms and conditions therein specified. The fourth section of this bill of lading contained the following clause, viz.:
“ In case of loss or damage to any of the goods therein mentioned for which this company will be liable, it is agreed that they shall have benefit of any insurance that may have been or may Ije effected on said goods, and shall in no case be answerable over to the insurers.”
Upon this bill of lading were written the words “O. R, Rel.,”' which stand for “Owner’s Risk, Release ; ” and in consequence of such release, a lower rate of freight was charged. This bill of lading constituted the contract for the carriage of the goods between the plaintiff and the railroad company, and by it the paintiff, in the face of its contract with the insurance company not to do so, and in order to obtain a lower rate of freight, gave to the carrier the benefit of the insurance, and expressly agreed that the carrier should in no case be answerable over to the insurers. This was a valid agreement, founded upon sufficient consideration to assign the interest of the assured; and, under all the circumstances, it was, between the parties to this action, just as effectual as an assignment in terms. The following considerations will take this clear. By the law of the contract of insurance, the assured impliedly agrees with his insurer that he will assign to him all claims and remedies against whoever shall cause injury to the property insured ; and, upon the payment of the loss to the assured, the insurer becomes subrogated to all the rights which the assured had or-then has, and any act of the assured which discharges or diminishes the rights of the insurer to such subrogation is a complete or pro tanto discharge of the liability of the insurer. In addition *335 to this implied contract, the present case contains the express warranty of the assured that the interest of the assured has not been assigned, or will not under any circumstances be assigned, to any common carrier.
In Platt v. Railroad Co., 108 N. Y. 358; 13 St. Rep. 660, the court of appeals construed a bill of lading containing identically the same language as the bill of lading in this case, and in doing so it was said :
“ Here, by the express contract between the assured owners and the railroad company, it was to have the benefit of the insurance, and thus it was entitled to the insurance for its indemnity; and when the insurance company paid the entire loss sustained by the fire to the assured, by the very terms of the contract, it relieved the defendant of any liability therefor. If the insurance company had not paid the loss to the assured, upon the payment of the loss by the defendant it (the common carrier) would have been entitled to be subrogated to the rights of the assured and to the full benefit of the policy which the assured had taken.”
The construction and interpretation given to these°words by the court of appeals should be adhered to in the present case ; and in so far as the case of Jackson Co. v. Boylston Mut. Ins. Co., 139 Mass. 508, is in conflict therewith, it should be disregarded. If, then, under these words of the bill of lading, the carrier is to have the full benefit of the policy, and the carrier is entitled to be subrogated to the rights of the assured under the policy, how can it be said that, in effect, the assured has not assigned his interest in the policy? Subrogation in one instance cannot mean any less than it does in the other. . The right of subrogation in the carrier is destructive of the right of subrogation of the insurer. By the contract entered into between the plaintiff and the carrier, the rights stipulated for by the insurer have been wholly nullified and cut off. This constitutes a breach of contract on the part of the plaintiff, and, within the rule laid down in Fayerweather v. Insurance Co., 118 N. Y. 324; 28 St. Rep. 689, defeats plaintiff’s right to recover on the policy.
The exclusion of the question addressed to Aekerson, a witness called on behalf of the plaintiff, and who was the superintendent of the Dundee Chemical Works, “Did you know anything, at the time these goods were shipped, of any such clause as is contained in article 4 of the bill of lading (Exhibit A) ? ” took place under circumstances from which it is not apparent that a legal error was committed thereby.
The judgment should be affirmed, with costs.
All concur.