Merrimack,
March 4, 1913.

### BOSTON ICE CO. & a. v. BOSTON & MAINE RAILROAD.

The law of the state where a contract of insurance is made and is to be executed is necessarily within the contemplation of the parties and must be examined to ascertain the terms by which they agreed to be bound.

The business of insurance is not a mere private right, but a matter of public concern—a franchise subject to regulation by the state for the public good; and the fact that an insurance company is permitted to do business within the state confers upon it no right to make a contract in contravention of the statutes.

The statute giving a railroad company an insurable interest in property situate upon its line which is exposed to damage by fire from locomotives, and entitling it to the benefit of insurance effected by the owner of such property (P. S., c. 159, ss. 30, 31), is not void on the ground that it abridges the insurer's freedom of contract.

When a statute revises the whole subject of a prior one and is clearly designed as a substitute therefor, the earlier law is repealed although no express terms to that effect are employed; and the same rule applies when the common law is changed or modified by legislative enactment.

Under section 31, chapter 159, Public Statutes, an insurer of property situate upon the line of a railroad cannot recover of the railroad company the amount paid to the owner of such property for a fire loss occasioned by the negligent operation of a locomotive.

CASE, against the defendant railroad and ten insurance companies, for the use and benefit of the Queen Insurance Company of America, a duly organized corporation doing business in New Hampshire. The declaration alleges that on October 9, 1909, certain property of the Boston Ice Company located near the tracks of the defendant railroad was destroyed by fire communicated thereto by

a locomotive negligently managed and operated by the defendant railroad, so as to emit an unusual and unnecessary quantity of sparks and hot coals; that the Queen Insurance Company, by reason of a policy of insurance issued by it upon said property and its destruction by fire, became liable to pay and has paid to said Ice Company $2,757.60, and brings this action to recover of the defendant railroad the amount so paid; that the other defendants are all corporations duly organized and doing business in the state, and each had in force at the time of the fire policies of insurance upon the property destroyed. The defendant railroad demurred. Subsequently all the other defendants joined as plaintiffs by leave of court, and the railroad renewed their demurrer. Transferred without ruling from the superior court by *Plummer* and *Chamberlin*, JJ. At the hearing in the supreme court counsel appeared for the Boston Ice Company.

*Remick & Jackson* (*Mr. Jackson* orally), for the Queen Insurance Company of America and other plaintiffs in interest. While the weight of authority is strongly against the defendants' contention that the legislature intended to abrogate the common law, a consideration of the equities involved and the injustice which would attend the operation of the statute if that contention were to prevail is even more decisive. That the legislature never intended to exempt railroads from liability for negligence is clearly apparent when the practical effect of the statute is considered. Prior to the act of 1840, there could be no recovery against a railroad unless negligence could be proven. That act broadened the liability of the railroad so that it could be held responsible for any damage caused by fire from its locomotives. Against every other individual or corporation that negligently causes a fire loss an insurer has a right to recover in a subrogation proceeding. What reason can be advanced for a special exemption in favor of railroads?

An illustration of the manner in which the statute would operate were the defendants' construction to be upheld may be seen in the following example: A dwelling and barn are situated between the railroad tracks and a foundry. On the same day the barn is destroyed by fire negligently communicated from the foundry and the dwelling by fire negligently communicated from a railroad locomotive. The property is insured. The underwriters pay the amount of the loss. They thereupon become entitled to recover from the owners of the foundry the insurance paid on account of the destruc-

tion of the barn, but they cannot recover from the railroad the insurance paid upon the dwelling. This is an absurd discrimination. Our legislatures in the past have been slow to enact measures which savored of "class legislation." Whenever a law has been found to operate in a manner which justly exposed it to the stigma of that phrase, they have hastened to correct the abuse in question with commendable unanimity of purpose. But if the statute under discussion is to accomplish the results indicated above, it is the rankest sort of "class legislation." It discriminates in favor of the railroads and against every other corporation and individual. No such result was ever contemplated.

Take other instances of the absurdities to which the defendants' interpretation might lead. Assume that the dwelling mentioned above is destroyed by a fire caused by the negligent operation of a locomotive, while on the same day the barn is destroyed by fire resulting from failure to safeguard properly a pile of worn-out ties set on fire by the railroad's section hands: In the first instance the underwriters are utterly without redress; in the second they may recover. An overheated bearing (more familiarly known as a "hot box") sets fire to its packing, and through negligence ignites dry grass or other combustible material along the right of way; the fire extends to the property of an adjoining landowner and causes a loss: If the bearing happened to be on the locomotive would an insurer be barred from recovery, although able to recover if the bearing were on the first car back of it? It is inconceivable that a deliberative body ever intended distinctions so entirely without reason. If the railroad is entitled to exemption at all, it is equally entitled in all cases. The fact that such inexplicable contradictions exist is the strongest argument that the legislature never took into account a construction that would make them possible.

The great weight of authority holds that the landowner need not anticipate negligence on the part of the railroad and is not guilty of contributory negligence even though he allows conditions to exist on his premises that render the negligence of the railroad practically certain to result in his injury. He may erect a warehouse close to the tracks and store it with inflammable material (*Cleveland etc. Ry.* v. *Scantland,* 151 Ind. 488), use benzine without special protection against sparks (*Kalbfleisch* v. *Railroad,* 102 N. Y. 520), leave dry grass and corn-stalks heaped near the right of way (*Walker* v. *Railway,* 76 Kan. 32), stack straw within thirty feet of the tracks

(*American etc. Co.* v. *Railroad,* 177 Ill. 513), or pile dry lumber within eight feet of the tracks with no provision for extinguishing fires (*Peter* v. *Railway,* 121 Mich. 324). In none of these instances can he be charged with assuming the risk of the railroad's negligence; but let him place insurance upon his property, and that moment the risk which he did not bear and the railroad did is transferred from the railroad to the insurance company. He is insured against his own negligence and that of others. But where the negligence of another is responsible for loss, the insurance company may recover what it has paid, the railroad alone excepted if the construction here contended for is to be upheld.

The policy of New Hampshire with regard to contracts exempting railroads from liability for their negligence, except where they undertake to do something they are not obliged to do, has been declared in no uncertain terms. Such contracts are void as against public policy. *Piper* v. *Railroad,* 75 N. H. 228, 435; *Baker* v. *Railroad,* 74 N. H. 100. It has been held that a railroad cannot enter into a contract exempting it from liability for negligently burning property not on its right of way or premises, unless the negligent act occurs while it is acting outside the scope of its duties as a common carrier. *Griswold* v. *Railway,* 90 Ia. 265.

We question whether the defendants could have contracted with the Boston Ice Company for exemption from liability for their negligence in the destruction of the ice-houses. Such an agreement would have had no other tendency than to cause them to disregard a duty owed the public and from which the law says they shall not escape, viz., operating their road with necessary care. Yet we are confronted with the spectacle of the defendants in this case claiming, by virtue of a special interpretation of a statute, an immunity which the courts frown upon as opposed to public policy—an immunity which tends to encourage negligence and disregard of the rights of others, which no other individual or corporation enjoys, and which is founded upon nothing more substantial than an arbitrary assertion of its existence.

The real purpose of the legislature in enacting the statute of 1861 is readily apparent; it was aimed at an inequality of burden imposed upon the railroads. The statute imposing absolute liability for fire damage had in immediate contemplation only the relations of the railroad and adjoining landowners. Between them, it was just that the corporation employing a dangerous agency should make compensation for all losses it occasioned, whether due to

negligence or not. It was but a reëstablishment of the beneficent common-law doctrine requiring the user of an extra-hazardous agency to keep it on his premises at his peril. *Rowell* v. *Railroad*, 57 N. H. 132, 136. But in the effort to do justice to the landowner, the legislature failed to consider the practical operation of the statute where the landowner carried insurance upon his property. The insurer upon payment of the loss became entitled to every right of recovery possessed by the landowner. The landowner could recover of the railroad under the statute by proving only that the fire was caused by a locomotive. Consequently the insurer had the same right, although his contract of insurance contemplated that he should bear the burden of losses from accidental causes. Against any other than the railroad, the insurer could not recover without proof of negligence. Although the railroad was an insurer by statute, and the underwriter an insurer by voluntary contract, the statute gave the underwriter a unique remedy against the railroad which it possessed against no other. Where a fire loss was due entirely to accidental causes, the railroad being without fault, it was entirely fair and reasonable that, as between two innocent parties, an insurer by force of the statute and an insurer by voluntary contract, the underwriter should bear the burden he had undertaken to bear. It was not unreasonable that the underwriter should stand toward a railroad guiltless of wrong, as he would stand toward all others who were guiltless. To correct this obviously unfair discrimination the legislation was enacted.

But the legislative pendulum did not swing from one extreme of injustice to another. It paused at a point where the common-law equilibrium was restored, where the insurer bore every loss arising from a cause he had insured against, and the railroad every loss for which its negligence was responsible. It took from the insurer no right that he possessed at common law, but only the undeserved statutory right that had been unwittingly conferred upon him. It is no easy task to find support in reason and the probabilities for a theory that the legislature, in seeking to reach an equitable adjustment between the two, lifted one unfair burden only to transfer a harsher burden by the same act and with even less excuse to a new victim. On the other hand, a construction of the statute in consonance with the views outlined above avoids irreconcilable contradictions, involves no strained reasoning, and does justice to railroad and insurer alike.

That the real purpose of the legislature was what we have sug-

gested finds additional support in the standard form of policy pre-
scribed in accordance with section 3, chapter 93, Laws of 1885,
enacted many years after the statute of 1861.   The policies under
which the insurers claim subrogation in this case were the standard
form in force since 1885.   This form has been before the legislature
and was specifically approved and continued in force.   P. S.,
*c.* 170, *s.* 1.   It contains the following clause:   "And whenever the
company shall pay any loss, the assured shall assign to it, to the
extent of the amount so paid, all rights to recover satisfaction for
the loss or damage from any person, town, or other corporation,
excepting other insurers, or the insured, if requested, shall prosecute
therefor at the charge and for the account of the company."   It
will be noted that the right of recovery is expressly against every
other corporation, except other insurers.   There is no exception
in favor of railroads, and the language is distinct to this effect.

*Robert W. Upton* (by brief and orally), for the Niagara Fire Insur-
ance Company and other plaintiffs in interest.

*Robert Jackson,* for the Boston Ice Company.

*Streeter, Demond & Woodworth* and *William W. Thayer (Mr.
Demond* and *Mr. Thayer* orally), for the Boston & Maine Railroad.

PARSONS, C. J.   "Sect. 29.   The proprietors of every railroad
shall be liable for all damages to any person or property by fire or
steam from any locomotive or other engine upon their road.

"Sect. 30.   Such proprietors shall have an insurable interest
in all-property situate upon the line of their road which is exposed
to such damage, and they may effect insurance thereon for their
own benefit.

"Sect. 31.   Such proprietors shall be entitled to the benefit of
any insurance effected upon such property by the owner thereof,
less the cost of premium and of expense of recovery.   The insurance
shall be deducted from the damages if recovered before the damages
are assessed, or if not, the policy shall be assigned to the proprietors,
who may maintain an action thereon."

If the foregoing sections of chapter 159 of the Public Statutes are
valid and are to be interpreted according to the ordinary rules of
the English language as to the meaning and use of its terms, the
insurance companies who claim by subrogation a right to maintain

this suit cannot recover.   The basis of their claim is that they have paid to the nominal plaintiffs, in performance of contracts of insurance made by them, the sums they seek to recover for damages occasioned to the property of such plaintiffs by fire from a locomotive upon the defendants' road.   By the statute the defendants are subrogated to any right of the insured against the insurance companies.   If the defendants are compelled to pay because of the damage, the statute authorizes them to recover of the insurance companies.   The result is that the right of subrogation, if it belongs to the insurer in other cases, is annulled by the statute as to losses of the class described in the legislation.   *Lyons* v. *Railroad*, 181 Mass. 551.

The answer of the plaintiffs in interest is (1) that the statute is unconstitutional and (2) that the statute was not intended to apply where the damage was caused by the negligent operation and management of the locomotive from which the fire was communicated. Upon the first ground, as the statute was enacted long before the contract of insurance was made and before any of the companies were permitted to do business in this state, and before they were organized, and as the companies had no title to or interest in the property injured except that created by the contract of insurance, the only constitutional ground which is suggested for the invalidity of the statute, so far as the insurance companies are concerned, that is entitled to notice, is the claim that it impedes their freedom of contract.

Since 1840, when railroads were first operated in this state, they have had by statute an insurable interest in the property along their lines for whose damage by fire they were made liable (Laws 1840, c. 561), but which would doubtless have been theirs without the statute.   May Ins. (3d. ed.), ss. 94, 94A; *Eastern R. R.* v. *Insurance Co.*, 98 Mass. 420, 423.   As both the railroad and the owner were liable to suffer loss by the destruction of the property by fire, a policy payable to the one upon whom the loss should fall would not offend the law of insurance or contracts.   The situation is analogous to that between carrier and shipper, where the carrier may insure against loss by himself or jointly with the shipper. *Jackson Co.* v. *Insurance Co.*, 139 Mass. 508; *Phœnix Ins. Co.* v. *Company*, 117 U. S. 312.   As the plaintiffs in interest could legally have made the contract of insurance in accordance with the statute, their right of contract is affected only if the statute compels them to so contract.   If such a construction of the statute were an uncon-

stitutional infringement of the general right of contract, such construction would not be given to it if some other meaning which would not violate the constitution could be found in its terms. The contract of insurance being made within this state to be executed in this state, the laws of the state upon the subject are necessarily within the contemplation of the parties and must be looked to to ascertain the terms by which they agreed to be bound. *Kimball* v. *Express Co.*, 76 N. H. 81; *MacDonald* v. *Railway*, 71 N. H. 448, 450. If the legislature had not power to prohibit the parties from making a contract of insurance which should not enure to the benefit of the railroad, the statute might be understood to mean that such should be the construction of the contract unless the parties otherwise agreed. So far as appears, the contracts of insurance involved do not attempt to exclude the railroad from the beneficial interest secured by the statute. The voidability of such a provision as against the statute, or the validity of the statute if intended to declare such a stipulation invalid, are questions not presented by the case. If there were, the power of the state to regulate and impose conditions upon the business of corporations which it creates or permits to act within it, and especially to regulate the business of insurance, is too well settled to permit of discussion. *Dyer* v. *Railroad*, 99 Me. 145; *People* v. *Formosa*, 131 N. Y. 478, 483; *Hooper* v. *California*, 155 U. S. 648, 652; *Orient Ins. Co.* v. *Daggs*, 172 U. S. 557; *Waters-Pierce Oil Co.* v. *Texas*, 177 U. S. 28, 43; *Hancock Ins. Co.* v. *Warren*, 181 U. S. 73; *Fidelity Ins. Co.* v. *Mettler*, 185 U. S. 308.

The contention of the plaintiffs, that having been permitted to do insurance business in the state they have the constitutional right to make a contract which the statute of the state forbids, in effect is a claim that they may make such contracts as they please, and if sound would practically nullify all the insurance legislation of the state. That as corporations the plaintiffs in interest have only such rights of contract as the state permits, that as the result of legislation the business of insurance is no longer a private right, but a matter of public concern—a franchise subject to regulation by the state for the public good (2 Spell. Ex. Rel., ss. 1807, 1808), and, finally, that the plaintiffs do not show any contract in contravention of the statute, answers the first objection to the statute.

The second claim is that section 31, chapter 159, Public Statutes, should be read with the insertion after the first sentence of the limitation "except when the damage is occasioned by the negligence

of such proprietors, their servants or agents." But there is no such language in the act. If it had been intended that damage so occasioned should not be attended by the general right of subrogation given, no sufficient reason appears why the limitation was not expressed. See *Hooksett* v. *Railroad*, 38 N. H. 242, 245. Nor does the history of the legislation aid the plaintiffs. Prior to 1840, there were only five and a quarter miles of railroad in operation, from Nashua to the state line, though the Boston & Maine and Eastern were put in operation that year. The legislation of June, 1840, was therefore probably founded upon Massachusetts' experience, or the legislation of that state in March, 1840, rather than upon the results of railroad operation here.

The act of 1840 provided: "Every rail road corporation or company now established, or which may hereafter be established within the limits of this state, shall be deemed and held liable to pay fully for all damages which shall hereafter accrue to any person or property within the same, by reason of fire or steam from any locomotive or other engine, used or to be used upon said roads respectively, for purposes of transportation or otherwise; provided, however, that the said rail road corporations are hereby empowered to effect insurance upon any property situate upon the line of said rail roads belonging to individuals and exposed to damages as aforesaid for their own safety and benefit, and in case of loss as aforesaid, shall be entitled to all the benefits of such insurance, any law, usage, or custom to the contrary notwithstanding." Laws 1840, c. 561.

The language of the statute was somewhat simplified by the revision of 1842, but no other change was made until 1861. In that year the following statute was enacted: "All insurance, effected by the owners thereof, upon property so situated upon the line of any railroad as to be exposed to destruction or damage by fire or steam from any locomotive or other engine upon such railroad, shall enure to the benefit of such railroad; so that, in case of the destruction or injury of such property, by fire or steam from any such engine, such railroad shall only be liable for the excess of damages sustained over and above the amount of the insurance actually received by such owners from the insurers." Laws 1861, c. 2489.

Although this latter statute was adopted over fifty years ago, no question as to its meaning or effect appears to have been presented to the court. In Maine and in Massachusetts, each possessing legislation in substance the same as the New Hampshire act of 1840, in 1895 our act of 1861 was in substance adopted, and in each

state there has been a judicial construction of its meaning.   The
discussion has involved a consideration of the law of 1840: whether
that act making railroads insurers was in addition to a common-law
right of action for the escape of fire through negligence, leaving
that ground of action still in existence, or whether by the statute
the ground of liability was changed, leaving only one ground upon
which the action could be maintained.   In Maine it was held that
the common-law action for negligence remained, and that the rail-
road right of subrogation was not given when the fire was caused by
negligence, because upon the opposite conclusion the loss would be
made to fall, not upon the guilty railroad, but upon the innocent
insurance company.   *Dyer* v. *Railroad,* 99 Me. 145.   But the ques-
tion is one of insurance, in which guilt of the party insured which
does not extend to intentional wrong is immaterial.   In Massa-
chusetts, as has already been seen in *Lyons* v. *Railroad,* 181 Mass.
551, it was held that the statute destroyed the insurance companies'
right of subrogation.   And in the later case, *New England Box Co.*
v. *Railroad,* 210 Mass. 465, the court said of the law of 1840
(*p.* 469):   "It made but one change, and that was in the ground of
liability.   That change consisted only in the elimination from that
ground of one element, namely, negligence.   Before the statute,
negligence, which was an essential element, the *sine qua non* of
liability, must be shown; after the statute, negligence no longer
became material.   This was not a case of an additional remedy
for the same cause of action upon the same ground of liability, but a
change in the ground of liability.   While the physical features of
the liability, namely, the communication of fire from the locomotive,
are the same, the ground of liability is changed.   There remains,
not two different grounds, on either of which the injured party may
proceed, but only one ground more favorable to one party and less
favorable to the other than that theretofore existing, yet neverthe-
less, now as then, only one ground.   The unit is changed, but it is
still a unit.   The old has yielded to the new.   .   .   .   Since the
passage of the statute the only action remaining for the injured
party is the one which is founded upon the liability as thereby
changed and which is therein provided."

    While the court has not been called to pass upon or construe the
act of 1861, the act of 1840 has been several times considered.   In
*Welch* v. *Railroad,* 68 N. H. 206, it was said of cases within the
statute:   "In such cases the liability of the proprietors of the road
is made absolute.   No question of care or negligence on their part

is left open," citing *Rowell* v. *Railroad*, 57 N. H. 132.   To the same
effect are *Hooksett* v. *Railroad*, 38 N. H. 242, and *Boyce* v. *Railroad*,
42 N. H. 97.   In *Hazeltine* v. *Railroad*, 64 N. H. 545, the liability
imposed upon the railroad under the law of 1840, in the form it now
appears as section 29, quoted *supra*, was held to extend to all kinds
of property.   The court say: "The plaintiff's right of recovery does
not depend upon the defendants' ability to obtain insurance upon
the property consumed.   The defendants have by the statute an
insurable interest in all property on the line of their road exposed to
damage by fire or steam from their locomotives or other engines."
In *Smith* v. *Railroad*, 63 N. H. 25, the objection that the statute
imposing the liability was a restraint upon interstate commerce
was considered settled adversely by federal authority.

In *Laird* v. *Railroad*, 62 N. H. 254, 266, it was said:   "Under
our New Hampshire statute relating to the liability of railroad
corporations for damages by fire, the question of negligence does
not arise."   The main contention in that case was whether
the Vermont statute, presumably founded on the Massachusetts
statute which preceded the law of 1840 (Mass. Laws 1837, *c.* 226,
*s.* 9) and which rendered railroad corporations liable in the class
of cases under discussion "unless they shall show that they have
used all due caution and diligence and employed suitable expedients
to prevent such injury (Vt. G. S., *c.* 28, *s.* 78), changed the common-
law liability of the defendants, or related merely to the mode of
trial and the remedy.   The conclusion was that the statute changed
the common-law liability.

In *Rowell* v. *Railroad*, 57 N. H. 132, 136, Judge *Ladd* says of the
statute: "This appears to be a reëstablishment, as to railroads, of
the ancient doctrine of the common law, requiring them to keep the
fire from their engines on their own premises at their peril."   "The
ancient rule was, that a person in whose house, or on whose land, a
fire accidentally orginated, which spread to his neighbor's property
and destroyed it, must make good the loss."   *Brown* v. *Collins*,
53 N. H. 442, 447.   But "by statute 6 Anne, chapter 31, made
perpetual 10 Anne, chapter 14 (1708, 1712), no action or process
whatever shall be had, maintained, or prosecuted against any person
in whose house or chamber any fire shall accidentally begin."   *Rus-
sell* v. *Fabyan*, 34 N. H. 218, 225.   In that case the question whether
the statute of Anne was in force here was left open, although it was
said "it is strongly recommended by its intrinsic equity."

If the legislature, in 1840, merely intended an additional ground

of liability, leaving in existence the common-law ground, and that question be material, some investigation may be necessary to learn what was then understood would be the common-law liability of persons authorized by law to drive through the country carrying fire and steam; for the ground of liability left in force must have been the one then understood to exist. It may not be entirely safe, in view of the growth of the doctrine of negligence in seventy years, to assume that our present understanding of correlative rights and duties was then held by the authors of the legislation. Blackstone took a view of the effect of the statute of Anne contrary to what is now held (1 Bl. Com. 431), which was not definitely held to be erroneous in England until 1847. *Filliter* v. *Phippard,* 11 Q. B. 347, 355, 356. The curious fact that the expression "any law, usage, or custom to the contrary notwithstanding," found in the statute of Anne, is also in the law of 1840, may have some bearing upon what was intended and upon the question which has been argued, whether by erroneous punctuation the clause in the law of 1840 has been apparently made to apply to the proviso rather than to the body of the act.

Under these circumstances, the nature and extent of railroad liability for damages from fire or steam escaping from their engines, as then understood, aside from that imposed by the statute, it may be difficult and perhaps impossible satisfactorily to ascertain. But assuming that it was understood in 1840 that under some circumstances the operators of locomotives would be liable to adjoining property owners for loss by fire escaping therefrom, the language of the act then passed indicates an intention to deal with the whole subject of such liability and to prescribe the ground upon which it should rest. When a statute revises the whole subject of a former one and is clearly designed as a substitute, the former law is repealed although no express terms to that effect are used. *Hillsborough* v. *Manchester,* 49 N. H. 57, 60; *Opinion of the Justices,* 66 N. H. 629, 668–671. "The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject

which shall be obligatory." *Roche* v. *Mayor*, 40 N. J. Law 257, 262. The rule is the same when the common law is revised by statute. *State* v. *Wilson*, 43 N. H. 415, 419; *State* v. *Morgan*, 59 N. H. 322, 324.

The statute did not grant an additional remedy, leaving the adjoining owner to his choice between that and the relief afforded by the common law. It dealt not at all with the form of the remedy, but with the rights of the parties. Those rights were necessarily correlative. If the presence of facts constituting negligence in the control of fire or steam was theretofore essential to sustain an action for damages against railroads, proof of the absence of such negligence was a good defence for the railroad. As the statute abolished the defence of due care, the question of negligence or of a liability there-for could not arise unless in some circumstances it was intended due care should excuse from liability. It could not as between the property owner and the railroad. As the railroads were expressly authorized to insure the property for their own protection, the question of care could not be material as to the validity of a claim under such policies. See authorities cited *post*. The only other relation in which the question could be raised is that of an insurance company claiming by subrogation the right of a property holder against the railroad. If the legislature had intended to preserve the defence of due care in any relation, here it must be found. The legislature might have provided that an insurer's right of subroga-tion should be limited to cases in which the railroad was in fault, but no such limitation was made, expressly or by implication; and in *Hart* v. *Railroad*, 13 Met. 99, decided in 1847, the insurer's right to subrogation was sustained upon a claim founded solely upon the statute. As no persons and no circumstances can be found between whom or under which the statute left the question of care material, the intention of the legislation to entirely repeal the common-law rule is established.

Although no case like *Hart* v. *Railroad* appears to have reached the law court in this state, it cannot be assumed that its principles were unknown here. It is therefore probable that if, in 1861, it had been intended to revive a rule of the common law understood to have been abolished twenty years before, that purpose would have been distinctly declared. It cannot be presumed that the legislature intended to make the question of care or negligence material, in the absence of some language indicating such purpose. If, under some circumstances, from the repeal of a statute abrogating a rule

of the common law an intention to revive such rule can be found (*State* v. *Rollins*, 8 N. H. 550), there is nothing in the act of 1861 which indicates such an intention. That act did not repeal the act of 1840, but was merely an additional provision. In effect, it dealt not with the rights of the property owner, but with the rights of insurers. The right of insurers to subrogation under *Hart* v. *Railroad* was probably understood to exist in all cases. The language of the act is "all insurance," *i. e.*, the insurance in all cases. A construction of the act which gives the railroad the benefit of the insurance in some cases and not in all is an abrogation of the declared legislative purpose.

If as herein considered, and as held in Massachusetts after the act of 1840, only a single ground of action remained, the conclusion necessarily follows that no ground is left upon which the insurers may proceed. But a contrary conclusion, as in Maine, does not necessarily dispose of the controversy; because even if besides the railroad's liability as insurers they may also be considered liable as tort-feasors, the matter is still open because the question now involved is the effect of the act of 1861 (P. S., c. 159, s. 31) and not that of the act of 1840 (*ss.* 29, 30, of the same chapter). The two are to be read together to ascertain the meaning; but whether the ground of railroad liability to the adjoining owner is exclusively covered by section 29, or not, is immaterial upon the question of the railroad's right to insurance treated of in sections 30 and 31. It is inconceivable that the legislature meant one thing in treating of this subject in section 30 and an entirely different thing in section 31. By section 30, the proprietors of a railroad are given an insurable interest in all property exposed to damage by fire and steam from locomotives. *Hazeltine* v. *Railroad*, 64 N. H. 545. Having an insurable interest in the property, they have the right to protect themselves from loss by damage to it by fire, whether caused by their misfortune, their own, or their servants' negligence. It would be no defence to a policy of insurance taken out by the railroad that the loss was occasioned by the negligent operation and management of the locomotive causing the fire. *Rowell* v. *Railroad*, 57 N. H. 132, 139; *Gove* v. *Insurance Co.*, 48 N. H. 41; *Huckins* v. *Insurance Co.*, 31 N. H. 238.

No cases are found in this state in which the right of subrogation of an insurance company against a railroad has been tested. In such a suit, the absence of fault on the part of the railroad (a question which does not appear to have been raised in *Hart* v. *Railroad*,

13 Met. 99) might be worthy of consideration upon the question whether one innocent of wrong, who has voluntarily undertaken to engage in transportation for the public benefit, ought in justice and equity to bear the loss, rather than one who has been paid to assume the risk, though equally guiltless. But the question so far as the insurance companies are concerned is not one of guilt or innocence, but merely one of contract. They have been paid for assuming a certain risk. What was the risk? If it was the joint risk of the owner and the railroad, the negligence of either is immaterial. If it was the risk of the owner diminished by a right of recovery against the railroad—if the fire was upon the ground of negligence chargeable to the railroad—how the fire was occasioned becomes material. So that the sole inquiry is: what was the contract? In the carrier cases there is no right of subrogation if the shipper has agreed that the carrier should have the benefit of his insurance, since the party entitled to subrogation can have no greater right than the one under whom he claims. Reading the contract with the statute, it provides that the railroad shall have the benefit of the owner's insurance. Testing the insurers' liability by the same standard, they agreed to pay the proprietors of the railroad if the loss fell on them.

No limitation being placed upon the right of the railroad to recover upon the policies the statute assigns to them, the contract must be understood to mean recovery for whatever the term "insurance" usually and ordinarily covers. That includes a loss by the insured's negligence or by the negligence of his servants. There is nothing in section 31 which authorizes a defence to a suit upon the policy by the railroad which could not be made to a suit by the owner, or upon a policy issued to the railroad. By their contracts of indemnity the plaintiffs in interest agreed to indemnify the railroad as well as the owner. Both are insured. There can be but one loss and one indemnity. That the plaintiffs in interest agreed to bear and to pay. Negligence as a cause of the loss is not an answer to the claim of either insured upon whom the loss has fallen. As the plaintiffs in interest are bound to indemnify the railroad if the loss falls on them, they cannot create the loss by recovery of the amounts paid the owners.

The consitutional right of the owner as affected by the statute, apart from that of the plaintiffs in interest, has not been argued. The statute does not require him to insure his property; neither does it apparently forbid him to exclude this risk from the insurance

he may take. Having taken insurance covering the risk, the only ground of injury to his property right arises from the possibility that he may have been obliged to pay a larger premium than he would have if the insurer's right of subrogation had not been destroyed. But it is unnecessary to consider whether such possible increase of premium would constitute such an unreasonable interference with the owner's property right as to be beyond the power of the legislature. If no such extra premium has been paid, no right of the owner has been impaired. If it has been, the plaintiffs in interest have the money. As they have received the equivalent of the sum they agreed to pay (*Hunt* v. *Association*, 68 N. H. 305, 306), no right of theirs is infringed by requiring payment. They are liable to indemnify the Ice Company and the railroad because they agreed so to do, and for no other reason. Technical objections to the maintenance of the action appear to have been removed by the rearrangement of the parties and the appearance for the nominal plaintiff. These objections and others, if any, to the form of the declaration have not been considered.

*Demurrer sustained.*

BINGHAM, J., concurred in the result: the others concurred.