[No. 8471.]

## RHINEHART ET AL. V. DENVER AND RIO GRANDE RAILROAD COMPANY.

1. RAILROAD COMPANIES—*Liability for Fires—Effect of Insurance.*

The liability imposed upon railway companies for fires set out in the operation of the railway by Rev. Stat., sec. 5512, is absolute. The owner of the property damaged or destroyed recovers his loss in full, though he may have obtained insurance upon such property, and received the insurance money. (379.)

The question is not affected by sec. 3, art. II, of the Constitution. (387.)

2. —— *The Common Law Liability of the Railway Company for Negligence,* is obliterated by the statutes, which prescribes the rule for all cases. What is said to the contrary in *Smith v. Denver Co.,* 54 Colo. 288, overruled. (385, 386.)

3. —— *Subrogation of Insurer.* Under the statute the insurer is not to be subrogated to the insured. Any contract to the contrary, or an assignment by the insured to the insurer, in the policy, of the former's right of action, is without effect. (380.)

4. —— *Title of the Act.* The title of the act (Laws 1903, c. 153) is sufficiently broad to sustain the provision limiting the liability of the railway company to the owner or mortgagee. (386.)

5. *Constitutional Law—Special Laws.* Even if Rev. Stat., sec. 5512, is to be regarded as a special law, it is not, for that reason, to be condemned by the courts. The necessity for a special enactment, in any case, is a legislative question. (388.)

6. —— *Class Legislation.* Sec. 5512 of Rev. Stat., being general in its terms, and applying to all cases within its scope, is not to be condemned as class legislation. (389, 390.)

The circumstance that no provision is made for the protection of others interested in the property, *e. g.* lessees, is not important. (389.)

The legislature being empowered to impose the liability may lawfully prescribe its extent, and specify those who may avail of it. (390.)

7. COMMON LAW—*Legislative Power Over.* No person has property in any rule of the common law. Property acquired under the common law cannot be taken away without due process, but any provision of the common law prescribing a rule of action may be changed in the legislative will, save as is prohibited by the Constitution. (384.)

*Error to Mesa District Court.* Hon. CHARLES CAVENDER, Judge.

Messrs. MCMULLIN & STERNBERG, for plaintiffs in error, Mary S. Rhinehart, W. Earl Rhinehart and Marjorie Rhinehart.

Mr. SYLVESTER G. WILLIAMS, for the Insurance Companies.

Mr. E. N. CLARK and Mr. R. G. LUCAS, for defendant in error.

Mr. Justice HILL delivered the opinion of the court.

The Rhineharts brought this action to recover from The Denver & Rio Grande Railroad Company damages for the destruction of their stock of implements, etc., caused by fire alleged to have been set by an engine of the railroad company. The complaint purports to set forth two causes of action. The first is predicated upon section 5512, Rev.

Stats., 1908, Act of 1903, pertaining to fires by railroad companies, etc. The second is for the same damages, and includes the same averments as the first, with the additional allegation that the fire was occasioned through the negligence of the railroad company. It is claimed that this states a common law cause of action based on negligence as held in *Smith v. Denver & Rio Grande R. Co.*, 54 Colo. 288.

The complaint alleges that certain insurance companies claim interests in the subject-matter of the action by reason of certain moneys paid under their respective contracts of insurance with the plaintiffs on account of this loss, by virtue of alleged rights of subrogation, and assignments claimed to have accrued under said policies; that plaintiffs are not advised as to the validity of such claims, and in order that the rights of all herein may be determined, the insurance companies were made defendants. The plaintiff prays that they be required to answer and disclaim or assert whatever interest they pretend to have, or that failing so to do they be hereafter barred from asserting any interest or claim to any recovery on account thereof as against the plaintiffs or the railroad company.

The insurance companies filed answers and cross-complaints in which they allege that they had written policies upon this property aggregating $2500. They also allege the same facts as the plaintiff concerning the fire, the cause, the loss, etc., and that they had each paid the owner the full amount of their respective policies. They set forth the provisions of their contracts of insurance, providing for the assignment of the cause of action, etc., to the extent of the amount of the policy, upon its payment, etc. Each asked that it be decreed to have an interest, to the extent of the insurance paid, in the amount of the recovery as the plaintiff may be entitled to receive from the railroad company, and to the judgment if any. They also asked judgments against the railroad company for the amount paid.

The railroad company, for the first defense, denied plaintiffs' allegations; for a second, alleged the execution of the insurance policies, their payment, its tender to the owners of the amount of the premiums paid by them for the insurance, and alleged that by reason of such payments the plaintiffs were paid all losses for destruction of their property, etc., and that the plaintiffs were not the real parties in interest, etc. It demurred to the answers and cross-complaints of the insurance companies, alleging they failed to state a cause of action, etc. These demurrers were sustained, and the action dismissed as to the insurance companies. The cause proceeded to trial between the owner and the railroad company. The total loss was fixed at $3400, it being admitted that plaintiffs had received $2500 from the insurance companies. Judgment was entered in favor of the plaintiffs against the railroad company for $900, the balance of their loss.

This writ of error is prosecuted by both the owners and the insurance companies; the owners claim that they were entitled to a judgment against the railroad for the total loss, regardless of the insurance. The insurance companies claim that the judgment should have been in their favor for the amount of the insurance paid. The railroad company contends that regardless of the merits of the insurance companies' claims, its demurrers to their answer and cross-complaints were properly sustained; that our Code will not permit suits against it, by an insurance company, in the manner attempted.

If the insurance companies are not entitled to recover from the railroad company or participate in the fruits of the judgment against it, the question of practice becomes immaterial, and as this question was ruled upon by the trial court and has been thoroughly argued, we think it better to pass upon the merits of this contention, even though it could be avoided by considering what is the cor-

rect rule of practice, which will not be determined. Is the owner entitled to recover the total loss from the railroad company, regardless of the amount received from the insurance companies? To put it in another way, can the railroad company escape its statutory liability because the owner has seen fit to contract and pay for indemnity against loss by fire from another source, and upon account of his close proximity to the railroad, probably pays a higher rate than otherwise? In such cases all the authorities are to the effect that unless otherwise provided by statute the insurance feature is no defense to the railroad company. *Hart v. Western Railroad Corporation,* 13 Metc. (Mass.) 99, 46 Am. Dec. 719; *Regan v. N. Y. & N. E. R. Co.,* 60 Conn. 124, 22 Atl. 503, 25 Am. St. Rep. 306; *Harding v. Town of Townshend,* 43 Vt. 536, 5 Am. Rep. 304; *Dillon v. Hunt,* 105 Mo. 154, 16 S. W. 516, 24 Am. St. Rep. 374; *Propeller Monticello v. Mollison,* 17 How. 152, 15 L. Ed. 68; *Connecticut M. L. Ins. Co. v. N. Y. & N. H. R. Co.,* 25 Conn. 265, 65 Am. Dec. 571; *Hayward v. Cain,* 105 Mass. 213; *Hall & Long v. Railroad Companies,* 13 Wall. 367, 20 L. Ed. 594; *C., St. L. & N. O. R. Co. v. Pullman So. Car Co.,* 139 U. S. 79, 11 Sup. Ct. 490, 35 L. Ed. 97; *Cunningham v. Evansville & Terre Haute R. Co.,* 102 Ind. 478, 1 N. E. 800, 52 Am. Rep. 683; *Hammond v. Schiff,* 100 N. C. 161, 6. S. E. 753; *The Yeager* (C. C.) 20 Fed. 653; *Mathews v. St. L. & S. F. Ry. Co.,* 121 Mo. 298, 24 S. W. 591, 25 L. R. A. 161; *Yates v. Whyte et al.,* 5 Scott, 640; 1 Sutherland on Damages (3d Ed.) § 158; *Briggs v. N. Y. C. & H. R. R. R. Co.,* 72 N. Y. 26; *Collins v. N. Y. C. & H. R. R. R. Co.,* 5 Hun. (N. Y.) 503; *Anderson v. Miller,* 96 Tenn. 35, 33 S. W. 615, 31 L. R. A. 604, 54 Am. St. Rep. 812.

The following cases: *Allen v. Chicago & Northwestern Ry. Co.,* 94 Wis. 93, 68 N. W. 673; *Swarthout v. Chicago & Northwestern Ry. Co.,* 49 Wis. 625, 6 N. W. 314; *Pratt v. Radford,* 52 Wis. 114, 8 N. W. 606; *Lancaster Mills v.*

*Merchants' Cotton-Press Co.,* 89 Tenn. 1, 14 S. W. 317, 24 Am. St. Rep. 586; *Cunningham v. Railroad,* 139 N. C. 427, 51 S. E. 1029, 2 L. R. A. (N. S.) 921; *Monmouth Co. Fire Ins. Co. v. Hutchinson and C. & A. R. Co.,* 21 N. J. Eq. 107; *Mobile & Montgomery Ry. Co. v. Jurey,* 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527; *Southern Ry. Co. v. Blunt & Ward* (C. C.) 165 Fed. 258; cited by the railroad company as sustaining their contention that when it is shown that the owner has been reimbursed for his loss by the insurance company, he cannot maintain an action against the person who caused the fire, because this would lead to a double recovery by the insured, do not justify this conclusion; but to the contrary, they all recognize the right of subrogation in the insurance company, where not prohibited by statute, and hold that when the owner has been paid the full amount of his loss by the insurer he cannot, under the practice where an action shall be brought by the real party in interest, maintain his suit, for the reason that he has no interest, because, as stated in these cases, in equity, or by contract, upon the payment to him of his loss by the insurer, the insurance company is subrogated to his right, and it alone is the real party in interest, and the only one that has the right to bring the suit. None of these cases are in conflict with those heretofore cited.

The general rule is that the question of double payment to the owner is a matter purely between the insured and the insurer. As stated by the Supreme Court of Indiana in *Cunningham et al. v. The Evansville and Terre Haute Railroad Company,* 102 Ind. 478, 482, 1 N. E. 800, 52 Am. Rep. 683:

"The contracts of the appellants for the insurance of their property, with the insurance companies, and their subsequent conduct in relation thereto, are matters in which the appellee, as the wrong-doer, had no concern, and which do not affect the measure of its liability. So the law

seems to be uniformly settled elsewhere, and we know of no sufficient reason for adopting a different rule of decision in this state."

Numerous cases are cited to sustain this declaration. In *Hayward v. Cain*, 105 Mass. 213, at p. 214, the court says:

"The transactions between the insurers and the owners of the property injured were matters in which the wrongdoer had no concern, and which do not affect the measure of his liability."

In *Merrick v. Brainard*, 38 Barb., 574, at page 589, it is said:

"I insure my furniture in my house; a person either willfully or negligently sets it on fire; and when I demand compensation for my loss, he insists upon his right to deduct the amount for which the property is insured. To say the least of it, the claim is wanting in modesty. But it is said that if I may retain the insurance money, and recover the value of the goods of the wrongdoer, I am the gainer by the accident. If I am, it ill becomes the wrongdoer to complain of it. If I cannot in justice retain more than the value of the property, which of the three parties concerned is entitled to the benefit of the deduction, the injured party, the wrongdoer, or the insurance company? Most clearly the latter. If I have not been paid by the insurance company before I collect of the wrongdoer, I am limited in the amount I am entitled to demand of the company to so much as will, in addition to the damages recovered, make good the loss. And if I have been already paid, the company is equitably entitled to recover so much of the damages as I have received over and above my actual loss."

This case was affirmed by the New York Court of Appeals in 34 N. Y. 208. There appears to be no distinction in the application of this rule, whether the liability is upon account of negligence, or the one imposed by statute regard-

less of it. No case has been cited to the effect that a double recovery cannot be had, if intended by statute, if the actions were properly brought. There are declarations to the effect that it ought not to be allowed, as being against public policy, unless intended by legislative enactment; on the other hand, it appears to have been recognized by some courts as a sound principle. In *Perrott v. Shearer*, 17 Mich. 48, at page 55 Chief Justice Cooley says:

"It certainly strikes one, at first, as somewhat anomalous, that a party should be in position to legally recover of two different parties the full value of goods which he has lost; but we think the law warrants it in the present case, and that the defendant suffers no wrong by it. He is found to be a wrong doer in seizing the goods, and he cannot relieve himself from responsibility to account for their full value except by restoring them. He has no concern with any contract the plaintiff may have with any other party in regard to the goods, and his rights or liabilities can neither be increased nor diminished by the fact that such contract exists. He has no equities as against the plaintiff which can entitle him, under any circumstances, to an assignment of the plaintiff's policies of insurance. The accidental destruction of the goods in his hands, was one of the risks he run when the trespass was committed, and we do not see how the law can relieve him from the consequences. If the owner, under such circumstances, keeps his interest insured, he cannot be held to pay the money expended for that purpose for the interest of the trespasser. He already has a right of action for the full value of the goods, and he does not give that away by taking a contract of insurance. For the latter he pays an equivalent in the premium, and is, therefore, entitled to the benefit of it, if any benefit shall result. The trespasser pays nothing for it, and is, therefore, justly entitled to no return. The case, we think, is within the principle of *Merrick v. Brainard*, 38 Barb. 574,

which appears to us to have been correctly decided. The plaintiff recovers of the defendant for the wrong that has been done him in taking his goods; and he recovers of the insurance company a large sum for a small outlay, because such payment was the risk they assumed, and for which they were fairly compensated. It is not a question of importance in this inquiry, whether the act of the defendant caused the loss or not; his equitable claim to a reduction of damages, if he could have any, would spring from the fact that the plaintiff recovers pay for his property twice; but the answer to this is, that he recovers but once for the wrong done him, and he receives the insurance money upon a contract to which the defendant is in no way privy, and in respect to which his own wrongful act can give him no equities."

The language in *C. & F. Lumber Co. v. D. & R. G. R. R. Co.*, 17 Colo. App. 275, 68 Pac. 670, does not sustain the railroad's contention concerning a double recovery. Its substance is to the effect that the railroad company should not be compelled to pay twice for the same wrong.

In *Home Insurance Co. v. Railroad Co.*, 19 Colo. 46, 34 Pac. 281, this court declined to reverse a case which denied to the insurance companies the right to recover from the railroad company upon assignment or subrogation where they had paid their loss, but before such payment the railroad company had made settlement with the owner for his loss, and made payment thereof. The declaration in that case is to the effect that there was no equity in the insurance company's contention; the result of this judgment was to allow the owner to retain a double payment, once from the railroad company and once from the insurance companies.

In *Regan v. New York & New England R. R. Co.*, 60 Conn. 124, 22 Atl. 503, 25 Am. St. 306, the Connecticut statutes eliminate negligence, but provide that every rail-

road company shall have an insurable interest in the property for which it may be so held responsible in damages, along its route, and may procure insurance thereon in its own behalf. At the trial the defendant sought to show that the plaintiff had received from insurance companies compensation for the damages. It was not permitted. This ruling was affirmed. At page 129, the court says:

"Any other conclusion would seem to us utterly at variance with established principles and sound reason, and contrary to an unbroken line of decisions by the courts of England and the United States.

If the defendant is entitled to have the insurance money deducted from the amount otherwise due, it must be because it owns or has some legal claim to the money. How happens it that the defendant corporation is entitled to this money? Not because it ever paid the premium or any part of it, nor because the policy was obtained for its benefit or upon its request, nor because there is any privity between it and the insurance company. Our own court in *Conn. Mutual Life Insurance Co. v. N. York, N. Haven & Hartford R. R. Co.,* 25 Conn. 265, 65 Am. Dec. 571, held that there was no privity between the defendant whose negligence caused the death of the insured, and the insurance company who issued the policy on the life of such person, and this position accords perfectly with the law in other jurisdictions.

The defendant, instead of paying anything toward procuring the policy, by its extraordinary use of the dangerous element of fire in close proximity to the plaintiff's property, rendered it necessary for him to pay a much larger sum to obtain his insurance than would otherwise have been required.

How then can the defendant claim, as it does, the exclusive benefit of the insurance? It came to the plaintiff from a collateral source, wholly independent of the defendant, and which as to him was *"res inter alios acta."* The

defendant, in our judgment, has no more claim to the insurance money that it would have to money obtained upon a subscription paper which the friends of Regan may have procured to make good his loss. How can the defendant make any distinction between money raised voluntarily after the loss, and that obtained from a contract of indemnity to which it was no party, and had paid no part of the consideration?

The statute upon which the action is founded justly imposes an absolute primary liability on the defendant for having caused the loss. But the ruling which the defendant asked for would completely nullify the statute as applicable to such a case as this, by practically imposing the primary obligation on the insurer, who is innocent, and allowing the defendant, who caused the loss and who alone could have prevented it, to go entirely free, at least to the extent of the insurance; for the insurer, having paid the money due the insured, could not get it back from him, and of course the insured, after such deduction from his damages, would have no remaining right to which the insurer could be subrogated to recover the money back again from the defendant.

If the principles that underlie the defendant's position are correct, had the loss been paid in full in ignorance of the fact that the plaintiff had obtained insurance, the defendant might bring a suit against the plaintiff to recover the money so paid; or had the money due on the policy not been paid, the defendant, after paying the loss in full, could intervene to prevent the amount due on the policy from being paid to the insured or any other than itself. What a strange subrogation that would be, to put the party who caused the loss in the place of the insured to enforce the contract between the latter and his insurer!"

For the reasons stated, the question of double recovery is a matter in which the railroad company has no concern, and cannot escape any part of its liability, created by stat-

ute, by showing that at the time of the fire the owner was protected by insurance, or what takes place afterwards between the insurer and the insured concerning it, unless the 1903 act was intended to give railroad companies the benefit of such insurance. In commenting upon this act in *British American Co. v. Colorado and Southern Ry. Co.,* 52 Colo. 589, at page 598, 125 Pac. 511, 41 L. R. A. 1202, we said:

"There is a direct conflict between the contract, which provides that Maul's right against the railway company shall pass by assignment to the insurance company, and the statute, which provides that it shall not. The purpose of the act is not to change the liability of the railway company to Maul; but to destroy the right of the owner to assign to the insurance company any liability of the railway company."

While this language is criticised by the railroad company as being *dictum,* as well as unsound, we cannot agree that it does not express one of the objects accomplished by the 1903 act which reads:

"Every railroad company operating its line of road, or any part thereof, within this state shall be liable for all damages by fires that are set out or caused by operating any such line of road, or any part thereof, in this state, whether negligently or otherwise; and such damages may be recovered by the party damaged, by the proper action, in any court of competent jurisdiction; Provided, The said action be brought by the party injured within two years next ensuing after it accrues; and Provided further, That the liability herein imposed shall inure solely in favor of the owner or mortgagee of the property so damaged or destroyed by fire; and the same shall not pass by assignment or subrogation to any insurance company that has written a policy thereon; Provided, That nothing in this act shall be held to apply to or in any manner affect any right which

has accrued prior to the passage hereof or any cause or suit now pending."

When the history of this act is taken into consideration, we cannot agree that the statute was intended to in any manner lessen the liability of railroad companies to owners upon account of such fires, but to the contrary, we are of opinion as stated in *The British American* case that,

"The statute is intended to provide an indemnity to owners against loss from fire caused by the operation of railroads. It was enacted to settle upon whom the loss should fall, and because of the peculiar manner in which railway companies use this dangerous element, it casts the responsibility of employing it on them."

Had the legislature intended to give railroads the benefit of this insurance, we think it would have said so as the statute does which was under consideration in *Leavitt v. Railway Co.*, 90 Me. 153, 37 Atl. 886, 38 L. R. A. 152, which made railroads liable regardless of negligence, but provided further,

"But such corporation shall be entitled to the benefit of any insurance upon such property effected by the owner thereof less the premium and expense of recovery. The insurance shall be deducted from the damages, if recovered before the damages are assessed, or, if not, the policy shall be assigned to such corporation, which may maintain an action thereon, or prosecute, at its own expense, any action already commenced by the insured, in either case with all the rights which the insured originally had."

The court held, that this act limited the owner's right to a recovery in the difference between the amount of the injury and the amount of the insurance received; that is that as the extent of the insured's rights was limited to the difference between the insurance and the loss, it could not, by assignment or subrogation, turn over to the insurance company something which it did not own or in fact which

did not exist, and that was any right to recover from the railroad company damages for a loss which an insurance company had contracted to make good.

To the same effect is *Lyons v. Boston & Lowell R. R. Co.*, 181 Mass. 551, 64 N. E. 404, where the statute made the railroad liable regardless of negligence, but also provided:

"In case such railroad corporation is held responsible in damages it shall be entitled to the benefit of any insurance effected upon such property by the owner thereof, less the cost of premium and expense of recovery. The money received as insurance shall be deducted from the damages, if recovered before the damages are assessed; if not so recovered the policy of insurance shall be assigned to the corporation held responsible in damages, and such corporation may maintain an action thereon."

Were this or similar language contained in our statute, we could accept the contention of the railroad company and allow it the benefit of the insurance, but we are not justified in inserting it and it would be equivalent to doing so if we gave it such a construction.

The insurance companies contend even though the 1903 act is valid, and deprives them of the benefit to be derived from assignment or subrogation, that this only applies to the owner's statutory cause of action, and not to his common law cause of action; that inasmuch as both the owner and they allege negligence in the setting of the fire, if they can establish it, they still have the right to assignment and subrogation under this latter cause of action. The railroad company contends that the 1903 act was intended to provide an exclusive remedy for damages by fire communicated by its engines and that the ruling in *Smith v. D. & R. G. R. R. Co.*, 54 Colo. 288, 130 Pac. 1009, to the contrary is wrong, and should be overruled, otherwise inconsistencies will continuously arise, some of which are that the owner might re-

cover upon the statutory liability as he did here, which could not be assigned, etc., yet the insurance company could allege negligence, and if they established it, recover upon the common law liability, and have the benefit of assignment or subrogation, whereas the statute intended that the owner's claim should not be assigned, etc., thus accomplishing indirectly that which cannot be done directly, etc. It also calls attention to one of the false premises upon which it claims the *Smith* case was based wherein, in commenting upon the two-year limitation, we said:

"It is not probable that within that time a plaintiff would endeavor to recover damages in an action for negligence that might be recovered in an action in which negligence cuts no part."

Regardless of this declaration to the contrary, that is just what the plaintiff has sought to do here, and if the insurance companies' position is correct many illogical results might follow; for instance, if the jury found the railroad company set the fire, and the plaintiff failed to establish negligence, the plaintiff could recover, but the insurance companies could have no interest in the result; but if negligence was established then the rule of assignment and subrogation would be applicable, etc., although in any of such cases we cannot present any reason why the owner should seek to establish negligence when his recovery from the railroad can be had just as well without it, unless—as is claimed here—it is done for the purpose of aiding the insurance companies to defeat the purposes of the statute. Can it be said that the legislature intended it to be left to the owner whether he could recover on his statutory cause of action in which insurance companies can have no interest, or under the common law where the insurance company would be entitled to subrogation, or did they intend to cover the entire matter, and thereby supersede the common law action? That the latter can be done is not open to question.

In *Mondou v. New York, New Haven & Hartford R. R. Co.*, 223 U. S. 50, 56 L. Ed. 327, 32 Sup. Ct. 175, 38 L. R. A. (N. S.) 44, the Supreme Court of the United States quotes with approval as follows:

"A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will * * * of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

The question of two such causes of action was under consideration in *New England Box Co. v. N. Y. C. & H. R. R. R. Co.*, 210 Mass. 465, 97 N. E. 140, wherein the Massachusetts statute is quite similar to ours; it was held that the common law liability was abolished, that the broader remedy given by the statute was exclusive, and that the insurance companies have no right of subrogation to the remedy of the insured against the railroad company under this statute. In commenting the court said:

"It made but one change, and that was in the ground of liability. That change consisted only in the elimination from that ground of one element, namely, negligence. Before the statute negligence, which was an essential element, the *sine qua non* of liability, must be shown; after the statute negligence no longer became material. This is not a case of an additional remedy for the same cause of action upon the same ground of liability, but a change in the ground of liability. While the physical features of the liability, namely, the communication of fire from the locomotive, are the same, the ground of liability is changed. There remains, not two different grounds on either of which the injured

party may proceed, but only one ground more favorable to one party and less favorable to the other than that theretofore existing, yet nevertheless, now as then, only one ground. The unit is changed, but it is still a unit. The old has yielded to the new.

In cases where the statutory action was applicable there was no further need of the common law action. We think for these reasons that the statute was intended to determine clearly and finally the rights and liabilities of the parties in a matter which by reason of the rapid development of railroads did not seem to be adequately provided for by the common law."

An examination of the Massachusetts statutes will disclose that it is less general in its application than ours, which is to the effect that railroad companies are liable for fires caused in the operation of their road, whether negligently or otherwise. The owner has plead two counts. If he can recover on the first there is no necessity for the second; if he can recover on the second, this entitles him to recover on the first and leaves no necessity for the second. It would be illogical to hold that it was intended to remain for the benefit of insurance companies when the act prohibits them the right of assignment or subrogation and says the liability imposed in favor of the owner is absolute, whether the fire was caused negligently or otherwise. After more thorough deliberation by the court *en banc*, we are of opinion that the statute was intended to cover the whole law upon the subject, otherwise the words "whether negligently or otherwise" included for the first time in the 1903 act would have to be held meaningless which was the effect of the opinion in *Smith v. D. & R. G. R. R. Co., supra,* but we cannot agree that such language as "whether negligently or otherwise" was not intended to embrace the entire law upon the subject. It conveys the intention that in either case the plaintiff has the right to recover under the stat-

ute. It imposes a liability for fires negligently set out, otherwise it would not have said so. In this respect it supersedes the common law. To refuse to give it this meaning would be to ignore the elementary rule of construction that no sentence or word is to be disregarded when a rationable meaning is applicable, for all of which reasons, the opinion in *Smith v. D. & R. G. R. R. Co.*, 54 Colo. 288, 130 Pac. 1009, will be overruled.

We cannot agree with the insurance companies that the substance of the assignment and subrogation portions of the 1903 act is not covered by the title as required by section 21 of article V of our Constitution, and for that reason invalid. The title reads: "An Act to provide a liability against railroad companies for damages caused by fire, and to repeal all acts and parts of acts in conflict therewith." For the reasons heretofore stated, this act was intended to supersede all previous liabilities imposed upon railroad companies for such fires. The title says "An Act to provide a liability" etc. This would cover any such liability. The title does not purport to state the extent of such liability. It is not required that it do so. To ascertain that we must look to the act itself, where we find that it creates it in favor of the owner or mortgagee only. The language used is "That the liability herein imposed shall inure solely in favor of the owner or mortgagee." We therefore find that the liability thus imposed, while not limited in amount, is limited to parties to which it shall inure, and in order that there might be no question concerning this limitation as to parties, there was added the further proviso "and the same shall not pass by assignment or subrogation to any insurance company" etc. The use of this language does not embrace another subject different than the one covered by the act, but is rather to emphasize the limitation upon or attached to the liability created by the act. In *Golden Canal Co. v. Bright*, 8 Colo. 144, at page 149, 6 Pac. 144, this court says:

"This constitutional inhibition must receive a reasonable construction. It is enough if the bill treats of but one *general subject,* and that subject is expressed in the title; to require that each subdivision of the subject, each and every of the 'ends and means necessary or convenient for the accomplishment of the object' must be specifically mentioned in the title, would greatly impede and embarrass legitimate legislation. Judge Cooley asserts that it would 'actually render legislation impossible.' Cooley, Const. Lim. *144."

In *People v. Wright,* 30 Colo. 439, 71 Pac. 365, this court says:

"We have repeatedly held that legislation germane to the subject expressed in the title of an act is not obnoxious to this provision, and that all matters legislated upon which are appropriate or relevant to the subject as thus expressed in the title, are germane."

Other cases in which the reasoning sustains our conclu¬ion in this respect are: *Clare v. The People,* 9 Colo. 122, 10 Pac. 799; *Dallas v. Redman,* 10 Colo. 297, 15 Pac. 397; *Edwards v. D. & R. G. R. R. Co.,* 13 Colo. 59, 21 Pac. 1011; *In Re Breene,* 14 Colo. 401; *Stockman v. Brooks,* 17 Colo. 248; *Catron v. County Commissioners,* 18 Colo. 553, 33 Pac. 513; *El Paso Co. v. Teller Co.,* 32 Colo. 310, 76 Pac. 368.

The claim of the insurance companies concerning the right of alienation guaranteed by section 3, article II of the Constitution is not involved, even were they in a position to raise it for the owner, which he has not seen fit to do; for the reason that the only liability in his favor is the one provided by the 1903 act, the assignment of which was and can be forbidden. *Chicago Lumber Co. v. Newcomb,* 19 Colo. App. 265, 74 Pac. 786, 4 Cyc. 26; *Leavitt v. Railway Co.,* 90 Me. 153, 37 Atl. 886, 38 L. R. A. 152; *Lyons v. Boston & Lowell Railroad Co.,* 181 Mass. 551, 64 N. E. 404; *Duggar v. Insurance Co.,* 95 Tenn. 245, 32 S. W. 5, 28 L. R. A. 796.

The insurance companies claim that the 1903 act is special and class legislation and in these respects is in violation of both federal and state constitutions. That portion of this contention pertaining to the assignment of such claims, etc., has been eliminated by holding that the common law action has been abrogated. If this were a special law, it would not, for that reason be invalid. It is settled in this jurisdiction that the necessity for a special law is a legislative question. *Brown v. City of Denver,* 7 Colo. 305, 3 Pac. 455; *Carpenter v. The People,* 8 Colo. 116, 5 Pac. 828.

We cannot agree that this act is arbitrary class legislation, or unequal in its operation. Whether it is unjust is not for us to determine, as said in *Metropolis Theatre Co. v. Chicago,* 228 U. S. 61, 57 L. Ed. 730, 33 Sup. Ct. 441:

"To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference."

In *Leavitt v. Railway Co.,* 90 Me. 153, 37 Atl. 886, 38 L. R. A. 152, the court had under consideration a statute which imposed liability upon railway companies for all damages done by fires set by locomotives, etc., but provided that the company should be entitled to the benefit of any insurance upon such property affected by the owner, and that this insurance should be deducted from the damages, if recovered before the damages were assessed, or if not the policy should be assigned to the corporation which might maintain an action thereon, or prosecute at its own expense any action already commenced by the insured. The law was upheld. In discussing it, at page 159, the court said:

" The law operates alike upon all persons and property similarly situated. The act is general in its terms and applies to all cases falling within its provisions. All persons and property subject to it are treated alike. The liability of the railroad corporation is the same, whatever the property injured or by whomsoever it may be owned. There is

no unjust discrimination in the protection given by the statute between different persons or classes of persons."

We think this principle applicable here and if valid to give the railway company the benefit of the insurance as the Maine act does. It is certainly valid to limit the liability of the railroad company to the owner or mortgagee of the property. The contention that the act to be valid should be equally applicable to all others who might be in some manner interested in the property including lessee, etc., is not tenable. The legislature has the right to provide classifications. The business of fire insurance is in a class by itself. It is a business effected with a public interest. The insurance companies are in the business of affording protection against loss by fire for a profit. They are paid to assume the risk and the making of a distinction between them and others rests on a natural and reasonable basis and is not founded on caprice.

The contention that because it does not apply to all fire insurance companies but only to those which have written policies on the destroyed property and for this reason that a distinction is obvious, is not tenable. The company which has written a policy on the property has assumed a special and distinctive relation toward the owner and the property not shared by the other companies in general. It applies to all that have received premiums and by so doing thereby assume a specific risk. These facts justify the classification. The act affects alike all similarly situated, to-wit, all companies sustaining a special relation to the property by reason of their policy and premium. It applies to all owners and mortgagees alike and in turn deals with the broad subject of railroad's liability for fire. If legislation aimed at railroads alone does not fall under the ban of class legislation, which is admitted, the other matters contained in this act are not subject to the same objection. If the legislature has the power to impose liability upon railroads for damages

·caused by fire, which is conceded, it follows that the legislature can qualify that liability as it sees fit.

In *Lyons v. Boston & Lowell R. R. Co.* 181 Mass. 551, at page 554, 64 N. E. 404, the court says:

"It is not questioned that the Legislature could at any time terminate the liability of railroad corporations for future fires, or limit it, or modify it in any way. The Legislature has seen fit to limit it to such amounts as are not covered by insurance, and in cases where there is insurance to leave the primary liability on the insurance company, where it would be if there were no statute imposing a burden on railroad companies."

The same principle is laid down in *Chicago Lumber Co. v. Newcomb,* 19 Colo. App. 265, wherein, at page 272, 74 Pac. 788, it is said:

"A mechanic's lien is the creature of statute. The power to enact the law includes the power to prescribe the conditions upon which the lien may be acquired, and with reference to which the rights of persons interested shall be determined."

To paraphrase these principles, it may be said that the power to enact the law imposing this fire liability includes the power to prescribe the conditions upon which the right of its enforcement may be acquired, and with reference to which the rights of all persons interested as owners, insurers or otherwise, should be determined. The reasoning in the following cases also tend to sustain our conclusion that this act is not subject to constitutional objection. *N. A. Co. v. Yates,* 214 Ill. 272, 73 N. E. 423; *Commonwealth v. Vrooman,* 164 Pa. 306, 30 Atl. 217, 25 L. R. A. 250, 44 Am. St. Rep. 603; *People v. Loew,* 9 Misc. Rep. 248, 44 N. Y. Supp. 42; *Consumer's League v. C & S. R. Co.,* 53 Colo. 54, 125 Pac. 577, Ann. Cas. 1914A, 1158; *Mutual Film Co. v. Ohio Industrial Commission,* 236 U. S. 230, 35 Sup. Ct. 387, 59 L. Ed. 552; *Mackin v. Detroit-Timkin Axle Co.* (Mich.) 153 N.

W. 49; *New England Box Co. v. N. Y. C. & H. R. R. R. Co.,*
210 Mass. 465, 97 N. E. 140; *Cleveland, C., C. & St. L. Ry.
Co. v. Marshall,* 182 Ind. 280, 105 N. E. 570; *German Ins.
Co. v Eddy,* 36 Neb. 461, 54 N. W. 856, 19 L. R. A. 707;
*Reilly v. Franklin Ins Co.,* 43 Wis. 446, 28 Am. Rep. 552;
*McCarter v. Firemen's Ins. Co.,* 74 N. J. Eq. 372, 73 Atl. 80,
414, 29 L. R. A. (N. S.) 1194, 135 Am. St. Rep. 708, 18 Ann.
Cas. 1048; Tiedeman on State and Federal Control of Per-
sons and Property, § 105; *Anderson v. Knotts,* 181 Ind. 434,
104 N. E. 754; *International Harvester Co. v. Missouri,* 234
U. S. 199, 34 Sup. Ct. 859, 58 L. Ed. 1276, 52 L. R. A. (N.
S.) 525; *Western U. T. Co. v. Milling Co.,* 218 U. S. 406, 31
Sup. Ct. 59, 54 L. Ed. 1088, 36 L..R. A. (N. S.) 220; *Provi-
dent Savings Institution v. Malone,* 221 U. S. 660, 31 Sup.
Ct. 661, 59 L. Ed. 899, 34 L. R. A. (N. S.) 1129; *M., K. & T.
Ry. Co. v. Cade,* 233 U. S. 642, 34 Sup. Ct. 678, 58 L. Ed.
1135; *Fid. Mut. Life Ass'n v. Mettler,* 185 U. S. 308, 22 Sup.
Ct. 662, 46 L. Ed. 922; *Barbier v. Connolly,* 113 U. S. 27,
5 Sup. Ct. 357, 28 L. Ed. 923; *Hayes v. Missouri,* 120 U. S.
68, 7 Sup. Ct. 350, 30 L. Ed. 578; *Mo. P. Ry. Co. v. Mackey,*
127 U. S. 205, 8 Sup. Ct. 1161, 32 L. Ed. 107; *Ozan Lumber
Co. v. Union Natl. Bank,* 207 U. S. 251, 28 Sup. Ct. 89, 52
L. Ed. 195.

The insurance companies' pleadings disclose that they
do not seek to recover anything from the owners except that
which they are to get from the railroad company. As the
statute prohibits them from having any interest therein,
their answers and cross complaints fail to state a cause of
action against either the owner or the railroad company,
for which reason, they having declined to amend, the action
was properly dismissed as to them. We do not determine
the question of double recovery between them and the own-
ers under their contractual relation as affecting public pol-
icy or otherwise. No such issue was attempted to be made
and it is questionable if it could have been in this action.

The railroad company was not entitled to any deduction upon account of insurance, for this reason the judgment will be reversed and the cause remanded with directions to enter judgment in favor of the owners in the sum of $3400, the total loss, with costs.

*Reversed and remanded with directions.*

Decision *en banc.*

Mr. Justice WHITE and Mr. Justice TELLER not participating.

Decided April 3rd, A. D. 1916.   Rehearing denied June 5, A. D. 1916.