## ASSOCIATED HOSPITAL SERVICE OF MAINE
### v.
## MAINE BONDING & CASUALTY CO.

Supreme Judicial Court of Maine.

Argued Nov. 9, 1983.

Decided May 31, 1984.

Verrill & Dana, Andrew M. Horton (orally), Paul F. Driscoll, Portland, for plaintiff.

Norman & Hanson, James D. Poliquin (orally), Stephen Hessert, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, Maine Bonding & Casualty Co. (Maine Bonding), appeals from a judgment for $7,783.89 entered in favor of the plaintiff, Associated Hospital Service of Maine (Blue Cross), in an equitable subrogation action in the Superior Court (Cumberland County). We reverse the judgment.

The facts are undisputed. On July 2, 1978, Terrance Caron, a member-subscriber of Blue Cross, was bitten by a dog owned by his neighbor, William Nadeau. Caron suffered serious physical injury as a result of the bite and required substantial medical care at the Eastern Maine Medical Center in Bangor. Hospitalization charges of $7,783.89 were incurred by Blue Cross on behalf of Caron.

At the time of the incident, Nadeau had a homeowner's liability policy with Maine Bonding which covered the accident. Relying upon the subrogation provision in its contract with Caron,[1] Blue Cross notified

---

1. There are two kinds of subrogation, one of which is termed "conventional," arising from contract, and the other, "legal," or, by reason of its origin and basis, "equitable," arising by operation of law. 73 Am.Jur.2d *Subrogation* § 2 (1974); 83 C.J.S. *Subrogation* § 1 (1953). The

Maine Bonding of its subrogation rights. Thereafter, Maine Bonding paid Caron $25,000 and obtained from him a general release of all claims against Nadeau. The claim was settled without notice to, and without the consent of, Blue Cross.

Upon discovery of the settlement Blue Cross demanded reimbursement from Maine Bonding for the amounts that Blue Cross had expended on the hospital care of Caron. Maine Bonding refused and this civil action was instituted in the Superior Court. After a non-jury trial, judgment was entered for Blue Cross in the amount of $7,783.89. From this judgment Maine Bonding appeals.

■■■ "Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim and its rights, remedies or securities." *Leavitt v. Canadian Pacific Railway Co.*, 90 Me. 153, 160, 37 A. 886, 888 (1897) (quoting

subrogation clause contained in Caron's subscriber's certificate with Blue Cross provides in full:

In the event a Member is entitled to receive payment or reimbursement from any other person or persons as a result of legal action or claim (except against insurers on policies of insurance issued to the Member in his name or to any family member who ordinarily resides in his household) with respect to any expenses paid or reimbursed to him under this contract, Blue Cross shall be entitled to *equitable rights of subrogation* against such other person or persons.

(emphasis added). We are not called upon to decide whether the right of subrogation in the present case is conventional, because it is provided for by contract, or legal, because it is so labeled. Both parties have treated the subrogation rights as legal or equitable in nature, and we do so also.

2. We note that some jurisdictions do not allow either conventional or legal rights of subrogation to medical expenses. *E.g., Allstate Insurance Co. v. Druke*, 118 Ariz. 301, 576 P.2d 489 (1978) (no right of subrogation on the ground that it was an illegal assignment of a personal injury claim); *Allstate Insurance Co. v. Reitler*, 628 P.2d 667 (Mont.1981) (same). Other jurisdictions permit only conventional subrogation.

*Jackson Co. v. Boylston Mutual Insurance Co.*, 139 Mass. 508, 509, 2 N.E. 103, 104 (1885)). Assuming, as the parties do, that Blue Cross has the right of subrogation,[2] the issue remaining is whether Caron had the right to recover from Maine Bonding those medical expenses incurred as a result of the dog bite. The answer must be in the negative. This is so because Nadeau, the tortfeasor, not his liability insurer, is the wrongdoer responsible for Caron's injuries. Maine Bonding merely insured Nadeau against such liability. Because the liability of Maine Bonding is predicated upon its contract of insurance with Nadeau, only a reach and apply action, 24-A M.R.S.A. § 2904 (1974),[3] could be maintained against it. Section 2904 requires the rendition of a final judgment against the tortfeasor as a condition precedent to the injured party's right to institute an action against the tortfeasor's liability insurer. *Allen v. Pomroy*, 277 A.2d 727, 731 (Me.1971). In the absence of the liability of the insured there can be no right of

*E.g., Courtney v. Harris*, 355 So.2d 1039 (La.Ct. App.1978) (no right of equitable subrogation because duty to pay cost of health care was a primary obligation); *Michigan Hospital Service v. Sharpe*, 339 Mich. 357, 63 N.W.2d 638 (1954) (same). The issue whether subrogation is available as a basis to recoup medical payments has not been raised on appeal, and we do not decide it.

3. 24-A M.R.S.A. § 2904 provides in pertinent part:

Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage.

. . . . .

No civil action shall be brought against an insurer to reach and apply such insurance money until 20 days shall have elapsed from the time of the rendition of the final judgment against the judgment debtors.

action against his insurer. Blue Cross succeeds only to the rights of Caron and thus it, too, must obtain a final judgment against Nadeau before it may properly pursue a claim against Maine Bonding to reach and apply the proceeds of the liability policy. The absence of such a final judgment is fatal to this action.

Because we reverse the judgment as one obtained in an unauthorized direct action against the defendant, we do not decide, and intimate no opinion, whether a general release by a subrogor to a tortfeasor or his insurer bars a subrogee's claim to subrogation when the tortfeasor or his insurer had notice of the subrogation claim prior to the execution of the release.

The entry is:

Judgment reversed.

Remanded for entry of judgment for the defendant.

All concurring.